IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MUSTAFA YOUNIS<br>ATEF YOUSEF,<br><br>Petitioner,<br><br>v.<br><br>ROBERT CERNA,<br>Acting Field Office Director, et al.,<br><br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CIV-26-798-R |

## REPORT AND RECOMMENDATION

Petitioner Mustafa Younis Atef Yousef, a noncitizen,[1] seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1.[2] United States District Judge David L. Russell referred the case to the undersigned Magistrate Judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Doc. 3. The Government responded, Doc. 8, and Petitioner has replied, Doc. 9. So, the matter is at issue.

For the reasons below, the undersigned recommends the Court grant Petitioner's habeas petition and order his immediate release.

---

[1]   This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[2]   Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

## I.    Factual background and procedural history.

Petitioner is a citizen of Jordan who entered the country on or about March 17, 2023. Doc. 1, at 3; Doc. 8, at 2 (citing Ex. 1). On March 24, 2023, the Department of Homeland Security (DHS) placed him into removal proceedings through the issuance of a Notice to Appear (NTA), which charged him as removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA).[3] Doc. 8, Ex. 1 at 1. He was released on an Order of Release on Recognizance and entered the Alternatives to Detention program. Doc. 1, at 3; Doc. 8, Ex. 2.

On January 26, 2024, Petitioner filed an Application for Asylum and Withholding of Removal. *See* Doc. 8, at 2 (citing Ex. 3). Immigration and Customs Enforcement (ICE) detained him in March 2026 and transferred him to the Diamondback Correctional Facility, where he remains detained. Doc. 1, at 4.

---

[3]    This section is codified in the United States Code at 8 U.S.C. § 1182(a)(6)(A)(i). Section 1182(a)(6)(A)(i) provides that a noncitizen who is present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General is ineligible to be admitted to the United States. *Id.* § 1182(a)(6)(A)(i).

## II.   Petitioner's claims.

Petitioner raises three grounds for relief:

(1)   Violation of the INA;

(2)   Violation of the Fifth Amendment's Due Process Clause, because his release was terminated without notice and without a hearing; and

(3)   Violation of the Fifth Amendment's Due Process Clause, because of the categorical denial of his right to an individualized bond hearing.

Doc. 1, at 11-14. Petitioner states that he has no criminal history and has complied with all reporting requirements and conditions of his release. *Id.* at 4, 10-11. He seeks a declaration that his detention is unlawful,  he asks for his immediate release, or, in the alternative, a prompt individualized bond hearing at which the Government bears the burden of proof, and asks that the Court enjoin Respondents from re-detaining him without complying with their constitutionally recognized procedures, including a pre-deprivation hearing. *Id.* at 14.

## III.   Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in

custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV.    Discussion.

### A.    8 U.S.C. § 1226 governs Petitioner's detention.

Section 1226 governs "the usual removal process." *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *1 (N.D. Cal. Sept. 12, 2025) (quoting *Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 108 (2020)). The § 1226 process starts when the Government files an NTA with an immigration court. *Id.* Section 1226 then lets the Government arrest and detain noncitizens or release them on bond or on conditional parole. 8 U.S.C. § 1226(a). Release is required if the noncitizen can show they are not a danger and will show up at future hearings. *Salcedo Aceros*, 2025 WL 2637503, at *1 (citing *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) and 8 C.F.R. § 236.1(c)(8)). If detention continues, the noncitizen gets a bond hearing before an Immigration Judge (IJ). *Id.* To be released, noncitizens must show by a preponderance of the evidence that they are not a security threat, community danger, or flight risk. *Id.*

4

The initial decision to pursue Petitioner's detention "under § 1226(a) precludes the Government from later 'switch[ing] tracks' to subject him to mandatory detention under [8 U.S.C.] § 1225(b)(2)." *Gutierrez v. Chesnut*, 2025 WL 3514495, at *5 (E.D. Cal. Dec. 8, 2025) (citing *Salcedo Aceros*, 2025 WL 2637503, at *8). The rule is simple: "Sections 1226(a) and 1225(b) cannot be applied simultaneously." *Salcedo Aceros,* 2025 WL 2637503, at *8.

The Court should conclude that § 1226(a) governs Petitioner's detention.[4]

---

[4]    Petitioner's asylum request does not change this outcome. This Court has "declined to find" that either refusing to voluntarily depart or seeking asylum "'constitutes 'seeking admission' for purposes of this subsection.'" *Malacidze v. Noem*, No. CIV-25-1527-D, 2026 WL 227155, at *3 (W.D. Okla. Jan. 28, 2026) (quoting *Cruz-Hernandez v. Noem*, No. CIV-25-1378-D, 2026 WL 18932, at *1 (W.D. Okla. Jan. 2, 2026)); *see also Hernandez Alvarez v. Warden, Fed. Det. Ctr*, 175 F.4th 1258, 1284 (11th Cir. 2026) ("This argument fails at the gate. Section 1225(b)(2)(A) makes it clear that an applicant for admission's status as one 'seeking admission' becomes relevant upon examination by an immigration officer, which occurs *before* a § 1229a proceeding even commences." (quoting 8 U.SC § 1225(b)(2)(A)).

## B.    Petitioner is entitled to relief under § 1226(a).[5]

In Ground I, Petitioner challenges the Government's position that § 1225 applies to him, rather than § 1226. Doc. 1, at 7. When ICE detained Petitioner after he had resided in the country for three years, he was not subject to mandatory detention under § 1225(b)(2)(A). Respondents released Petitioner under § 1226. So Petitioner is entitled to retain the legal protections under § 1226(a). And Respondents cannot erase them by simply "switching tracks." *Salcedo Aceros*, 2025 WL 2637503, at *8; *Briceno Solano v. Mason*, 2026 WL 311624, at *14 (S.D.W. Va. Feb. 4, 2026).

To release Petitioner, DHS had to determine that he "would not pose a danger to property or persons," and that he was "likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). Respondents identify no change in circumstances that required revocation of Petitioner's conditional release. So he is entitled to release. *See Barbosa da Cunha v. Freden,* 175 F.4th 61, 70 (2d

---

5    Respondents argue the Court lacks jurisdiction to consider Petitioner's statutory claim. Doc. 8, at 4-5. The Court should reject this argument. *See, e.g.*, *Cortes v. Holt*, No. CIV-25-1176-SLP, 2026 WL 147435, at *3 (W.D. Okla. Jan. 20, 2026) (agreeing with the Magistrate Judge's conclusion that "Petitioner's claim that Respondents are detaining him without a bond hearing in violation of the INA does not divest the Court of jurisdiction. Such a claim does not "arise from" and is not directly connected to the commencement of removal proceedings, the adjudication of removability, or the execution of any removal order. Rather, Petitioner challenges the legality of his continued detention under the statutory framework governing custody and bond determinations.").

Cir. 2026) (concluding the petitioner's detention was "governed by Section 1226(a), not Section 1225(b)(2)(A)," and explaining that its holding "allows noncitizens . . . who are already present in the United States and are determined not to be a flight risk or danger to the community to be released on bond under Section 1226(a) while their removal proceedings are pending").

### C.    Petitioner's procedural due process claim.

In Ground II, Petitioner asserts that Respondents have violated his due process rights by re-detaining him "without constitutionally adequate procedures." Doc. 1, at 12.

"The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas,* 533 U.S. at 690 (internal quotation marks and alterations omitted); *cf. Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)).

"The [INA] establishes procedures for removing [and detaining noncitizens] living unlawfully in the United States." *Johnson v. Guzman Chavez,* 594 U.S. 523, 527 (2021); *see Johnson v. Arteaga-Martinez,* 596 U.S.

7

573, 578 (2022) ("The INA establishes procedures for the Government to use when removing certain noncitizens from the United States and, in some cases, detaining them.").

This Court analyzes Petitioner's procedural due process claim to determine whether he has a protected liberty interest, and what process is necessary to ensure any deprivation of that liberty interest aligns with the Due Process Clause of the Fifth Amendment. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). In examining the necessary process, the Court turns to the three factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

"When the [G]overnment grants [a noncitizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment." *Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025); *see also Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest

8

in their 'continued liberty.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at \*3 (D.N.M. Feb. 27, 2026) (finding "that noncitizens acquire a liberty interest once released from immigration detention"). Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects"); Doc. 1, at 12. Respondents deprived Petitioner of his protected status when ICE detained him and placed him into custody.

Turning to the *Mathews* factors, the Court finds that Petitioner has a significant private interest in remaining free from detention after spending three years in the United States before his present detention. By initially releasing Petitioner on parole under § 1226(a), the Government necessarily determined that he was "neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). Respondents have presented no evidence that there was a change in this assessment. By permitting Petitioner to remain at liberty for three years following the issuance of his NTA, the Government enabled Petitioner to develop a protected liberty interest in remaining out of custody. To be sure, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). But that power

9

remains "subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695. And it does not erase Petitioner's significant interest in remaining free from detention.

Respondent does not suggest Petitioner violated any laws while in the United States. During his release, Petitioner's interest in release grew even stronger as he presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. The first *Mathews* factor favors Petitioner.

Second, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of an erroneous deprivation of Petitioner's liberty interest is considerable where he was detained without notice or a hearing.

"Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient." *Saqib v. Andrews*, 2026 WL 350830, at *6 (E.D. Cal. Feb. 9, 2026), *adopted*, 2026 WL 440566 (E.D. Cal. Feb. 17, 2026). Respondents detained Petitioner with no procedural safeguards to determine whether the revocation of his release was justified. This factor weighs in Petitioner's favor. *See, e.g., E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a

10

valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

Finally, the Court considers the Government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. "While this Court recognizes that the [G]overnment has an interest in enforcing immigration laws," the Government's interest in arresting Petitioner without a determination whether he posed a risk of flight or danger is low. *Saqib*, 2026 WL 350830, at *6; *see, e.g.*, *Diaz v. Kaiser*, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T[he Court concludes that the [G]overnment's interest in re-detaining Petitioner . . . is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."). And the Court can discern no significant administrative or fiscal burden associated with placing the burden on the Government to follow its own laws and regulations. *See, e.g.*, *Iza,* 2026 WL 67152, at *3 ("An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the [G]overnment comports with its own internal standards regarding parole revocation."). Especially given that Petitioner's detention was not deemed necessary for three years.

### D.    Remedy.

Habeas is "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "The typical remedy for such detention is, of course,

11

release." *Id.*; *see also Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."). Federal district courts have broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). District courts have the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243*; see also United States v. Allen*, 139 F.3d 913 (10th Cir. 1998) ("If the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release." (quoting *Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir. 1990))).

The undersigned finds that the misapplication of the INA and the ongoing violation of Petitioner's due process rights require his immediate release subject to the same conditions of his earlier release.[6] This view is shared by numerous courts across the country.[7]

---

[6]    "Many orders in similar cases require that a bond hearing be set in a short period of time with an automatic release if the hearing does not occur. Those cases do not examine the effect of a pending asylum petition or a clear conditional release order under § 1226." *Velasquez Montillo v. Brooksby*, 2026 WL 592355, at *10 (D. Utah Mar. 3, 2026).

[7]    *See Ewere v. Cerna,* No. CIV-26-320-SLP, 2026 WL 1207088, at *1-2 (W.D. Okla. May 4, 2026) (ordering Petitioner's "immediate release" for due process violation and denial of a bond hearing); *Singh v. Noem*, 2026 WL 766228, at *10 (D.N.M. Mar. 18, 2026) ("Petitioner's . . . release is required to remedy the ongoing due process violation caused by Petitioner being detained while his conditional parole has not yet been terminated."); *Velasquez Montillo*

## V. Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court **grant** Petitioner's habeas petition in part and **order his immediate release.**[8] **The undersigned also recommends that the Court order the Government to certify compliance with the Court's order by filing a status report within ten business days of the Court's order**, and to promptly provide a copy of this order to Counsel for the Warden of the

---

*v. Brooksby*, 2026 WL 592355, at *10 (D. Utah Mar. 3, 2026) (concluding immediate release was the appropriate remedy where "there has been no notice of a change in circumstances requiring modification of the November 2021 [order of release on recognizance]"); *Vielma Uzcategui v. Brooksby*, 2026 WL 622751, at *13 (D. Utah Mar. 5, 2026) (same as to petitioner ordered released on her own recognizance in September 2023); *Murzi v. Noem*, 2026 WL 395111, at *2 (D. Colo. Feb. 12, 2026) (ordering petitioner's immediate release where petitioner had previously been released on parole).

[8]     Should the Court determine a bond hearing is the appropriate remedy, the undersigned recommends that, given Petitioner's prolonged detention under the incorrect statute, the Court should find that it is more appropriate for the Government to bear the burden of proof in this context. *See, e.g.*, *Garcia Cortes v. Noem*, 2025 WL 2652880, at *5 (D. Colo. Sept. 16, 2025) (placing the burden of proof on the Government to justify the petitioner's continued detention (citing *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1185 (D. Colo. 2024)). Having released Petitioner in 2023, the Government ought to now bear the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or a risk of flight such that he should remain in detention. *See L.G.*, 744 F. Supp. 3d at 1186 ("In general, the Supreme Court has held that the clear and convincing standard applies to civil detention where liberty is at stake." (first citing *United States v. Salerno*, 481 U.S. 739, 751 (1987), and then citing *Addington v. Texas*, 441 U.S. 418, 433 (1979))).

Diamondback Correction Facility. Finally, the Court should order that Respondents cannot re-detain Petitioner without notice and a pre-deprivation hearing before a neutral decision-maker where the Government bears the burden of proving, by clear and convincing evidence that Petitioner is a flight risk and a danger to the community.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by June 29, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[9] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation

---

[9]     Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").

disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 24th day of June, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE